IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| HUNTER HART, COY COHENOUR (through his parents), MONTANA COHENOUR (through his parents), DAVID COHENOUR, as parent and individually, and HEIDI HART, as parent and individually,<br><br>Plaintiffs,<br><br>vs.<br><br>PACIFICSOURCE HEALTH PLANS, a health insurance service corporation, and JOHN DOES I-V,<br><br>Defendants. | CV 18-56-BU-BMM-JCL<br><br>FINDINGS AND RECOMMENDATION |

This insurance bad faith case comes before the Court on cross-motions for partial summary judgment by Plaintiff David Cohenour and Defendant PacificSource Health Plans. For the reasons set forth below, David's[1] motion should be denied and PacificSource's motion should be granted.

## I.     Background

David and Heidi Hart are married and are the biological parents of Hunter Hart, Coy Cohenour, and Montana Cohenour. (Doc. 31, ¶ 1). The boys are severe

---

[1] Because the Plaintiffs share common last names, the Court will refer to them by their first names rather than their surnames.

hemophiliacs and require antihemophilic medication, which is prescribed by their treating physician. (Doc. 31, ¶ 3). This antihemophilic medication is very expensive, and is considered by PacificSource to be a high cost injectable medication. (Doc. 31, ¶ 6).

In December 2015, Heidi submitted an Individual and Family Policy Enrollment Form to PacificSource. (Doc. 35, ¶ 1). The PacificSource policy ("the Policy") went into effect on January 1, 2016, and provided health insurance coverage for Heidi and the three boys. (Doc. 31, ¶ 8; Doc. 35, ¶ 2). David is not named as an insured on the Policy. (Doc. 26-3, at 1). Throughout the term of the Policy, premiums were timely paid out of a joint banking account held by David and Heidi. (Doc. 31, ¶ 9).

From approximately January through June 2016, PacificSource paid for the antihemophilic medication as prescribed by the boys' treating physician. (Doc. 31, ¶ 14). In June 2016, PacificSource sent the prescription drug claims out for external review. (Doc. 35, ¶ 2). Based on the clinical information provided, the external reviewer determined, among other things, that "the requested dosing [was] not clearly medically necessary." (Doc. 30-2, at 3). In a letter dated July 11, 2016, PacificSource effectively stated that it would no longer pay for the full dose and frequency of antihemophilic medication as prescribed by the boys' treating

hemophiliacs and require antihemophilic medication, which is prescribed by their treating physician. (Doc. 31, ¶ 3). This antihemophilic medication is very expensive, and is considered by PacificSource to be a high cost injectable medication. (Doc. 31, ¶ 6).

In December 2015, Heidi submitted an Individual and Family Policy Enrollment Form to PacificSource. (Doc. 35, ¶ 1). The PacificSource policy ("the Policy") went into effect on January 1, 2016, and provided health insurance coverage for Heidi and the three boys. (Doc. 31, ¶ 8; Doc. 35, ¶ 2). David is not named as an insured on the Policy. (Doc. 26-3, at 1). Throughout the term of the Policy, premiums were timely paid out of a joint banking account held by David and Heidi. (Doc. 31, ¶ 9).

From approximately January through June 2016, PacificSource paid for the antihemophilic medication as prescribed by the boys' treating physician. (Doc. 31, ¶ 14). In June 2016, PacificSource sent the prescription drug claims out for external review. (Doc. 35, ¶ 2). Based on the clinical information provided, the external reviewer determined, among other things, that "the requested dosing [was] not clearly medically necessary." (Doc. 30-2, at 3). In a letter dated July 11, 2016, PacificSource effectively stated that it would no longer pay for the full dose and frequency of antihemophilic medication as prescribed by the boys' treating

physician. (Doc. 17-1).

Heidi appealed PacificSource's decision internally and filed a complaint with the Montana Insurance Commissioner's Office. (Doc. 31, ¶ 17; Doc. 35, ¶ 4). Between August and November 2016, two additional external reviews were conducted. (Doc. 31, ¶ 18). On November 17, 2016, after receiving the results of the second external review, PacificSource approved the antihemophilic medication dosages and frequencies as prescribed by the treating physician. (Doc. 31, ¶ 19; Doc. 35, ¶ 6).

In July 2018, David and Heidi, individually and on behalf of their three sons, commenced this action against PacificSource in the Montana Eighteenth Judicial District Court. (Doc. 1-2). The Complaint alleges claims for breach of contract and violations of Montana's Unfair Trade Practices Act ("UTPA"), Mont. Code Ann. § 33-18-201 et seq. (Doc. 1-2, at 13-16). In addition, David seeks a declaratory judgment stating that he is a first-party insured or, alternatively, a third-party claimant/beneficiary under the Policy. (Doc. 1-2, at 16-17).

In August 2018, PacificSource removed the case to this Court pursuant to 28 U.S.C. § 1441, based on diversity of citizenship. (Doc. 1). The parties have filed cross-motions for summary judgment to adjudicate David's status under the Policy and determine whether he qualifies as a first-party insured or a third-party

3

claimant/beneficiary under the Policy, thereby entitling him to maintain a bad faith claim against PacificSource.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may

not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

### III. Discussion

The state court Complaint includes a claim for relief under the Montana Declaratory Judgment Act, Mont. Code Ann. § 27-8-201 et seq. (Doc. 1-2, at 16-17). In substance, David asks the Court to issue a declaratory judgment finding that he is a first-party insured or, alternatively, a third-party claimant/beneficiary under the Policy. (Doc. 1-2, ¶ 84).

Where, as here, a case seeking declaratory relief is removed to federal court based on diversity jurisdiction, the propriety of granting declaratory relief is a procedural matter to which federal law applies but the underlying substantive issues are governed by state law. *Paul Evert's RV Country, Inc. v. Universal Underwriters Ins. Co.*, 2016 WL 3277175, *2 (E.D. Cal. June 14, 2016) (citing *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 752 (9th Cir. 1996), *overruled on other grounds by Govt. Employees Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir. 1998)). Thus, although the Complaint seeks relief under the Montana Declaratory Judgment Act, § 27-8-201 et seq., the Court treats David's claim for declaratory relief as if it were pled under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. See *Columbia Casualty Co. v. Federal Ins. Co.*, 2015 WL 4734704, *2 n. 1 (N.D. Cal. Aug. 10, 2015) (citing *Golden Eagle*, 103 F.3d at 754). For purposes of determining David's status under the policy, however, the Court looks to the substantive law of Montana as the forum state. See e.g. *757BD LLC v. National Union Fire Ins. Co. of Pittsburgh, PA*, 330 F.Supp.3d 1153, 1159 (D. Ariz. 2016).

Under Montana law, "[a]n insured or a third-party claimant has an independent cause of action against an insurer for actual damages caused by the insurer's violation" of certain sections of the UTPA. Mont. Code Ann. § 33-18-

242. If David qualifies as an insured under the Policy, he would also be entitled to bring a breach of contract claim against PacificSource. Mont. Code Ann. § 33-18-242(3). See also *Lorang v. Fortis Ins. Co.*, 192 P.3d 186 (Mont. 2008). Alternatively, if David qualifies as a third-party claimant, he would have a common law cause of action for bad faith in addition to his claim under the UTPA. See *Brewington v. Employers Fire Ins. Co.*, 992 P.2d 237, 240-41 (Mont. 1999).

### A. First-Party Insured

David's argument that he should be considered an insured under the Policy has three components. First, David contends he has certain parental obligations under Montana law and paid for the Policy in furtherance of those obligations. Second, David argues he has an insurable interest in his children and is therefore entitled to enforce the insurance contract for the benefits of the Policy. Third, David maintains that as a result of his insurable interest, he has third-party ownership in the Policy and should therefore be afforded all of the rights and remedies that belong to a first-party insured.

#### 1. Parental Obligations

David begins with the premise that he has certain statutorily imposed parental obligations to his children. He relies on Mont. Code Ann. § 40-6-211, which provides that "[t]he parent or parents of a child shall give the child support

7

and education suitable to the child's circumstances." The Montana Supreme Court has interpreted this statute as requiring parents to provide medical aid and care for their children. *State v. Hoffman*, 639 P.2d 507, 509 (Mont. 1982). David claims that in furtherance of these obligations, he helped pay the premiums on the Policy from his and Heidi's joint bank account.

PacificSource does not dispute that David has statutory and moral obligations to care for his children but argues these parental obligations do not make him a first-party insured. PacificSource is correct. Heidi, not David, is the policyholder and David is not named an additional insured. (Doc. 26-3, at 1). The fact that David has a parental obligation to care for his children has no bearing on whether he has the right to enforce the Policy as a first-party insured. Nor does it materially advance his remaining arguments, which are addressed separately below.

    2.  <u>Insurable Interest</u>

David maintains he has an insurable interest in his children, which gives him the right to enforce the Policy as a first-party insured. Under Montana law, an individual may procure an insurance contract for the benefit of another person, provided the individual has an in "insurable interest" in the other person. Mont. Code Ann. § 33-15-201(1). An "insurable interest" includes, "in the case of

individuals related closely by blood or by law, a substantial interest engendered by love and affection." Mont. Code Ann. § 33-15-201(3)(a). PacificSource agrees that under this standard, David may well have an insurable interest in his children. But even assuming he does, PacificSource argues that does not make him an insured under the Policy.

According to David, however, the fact that he has an insurable interest in his children is sufficient to give him the right to enforce the Policy. For support, David relies on *Omaha Property and Casualty Co. v. Crosby*, 756 F.Supp. 1380, 1383 (D. Mont. 1990). David cites *Omaha* for the proposition that any person with an insurable interest is entitled to enforce an insurance contract for the benefits of the insurance policy. But as PacificSource correctly points out, that is not what the case holds.

In *Omaha*, a mother who was the named insured on an automobile insurance policy added a vehicle owned by her son to the policy. *Omaha*, 756 F.Supp. at 1381-82. The insurer argued the insurance policy was unenforceable under Montana law because the mother did not have an insurable interest in her son's vehicle. *Omaha*, 756 F.Supp. at 1383. The court disagreed and found after considering the relevant factors that the mother had "an actual, lawful, and substantial economic interest" in the vehicle as required to establish an insurable

interest in property. *Omaha*, 756 F.Supp. at 1383 (referring to Mont. Code Ann. § 33-15-205(2) governing restrictions on property insurance). While *Omaha* can be read as recognizing that an insurance policy may be unenforceable if the named insured does not have an insurable interest in the subject of the policy, it does not support David's argument that any person with an insurable interest has the right to enforce an insurance policy even if that person is not a named insured.

Under Mont. Code Ann. § 33-15-201(1), the fact that David has an insurable interest in his children means he could have procured a health insurance contract for their benefit. See Mont. Code Ann. § 33-15-201(1). But for whatever reason, he did not do so. The undisputed evidence establishes that it was Heidi who procured the Policy providing health insurance coverage for Hunter, Coy, and Montana. David is not named as an insured on the Policy, and the mere fact that he has an insurable interest in his children's health does not mean that he is entitled to enforce the Policy as if he were an insured.

### 3. Third-Party Ownership

David next argues that he is a third-party owner of the Policy and is therefore entitled to the rights and remedies available to a first-party insured. David relies on Montana's third-part ownership statute, which appears in the Disability Insurance Chapter of the Montana Code Annotated and states:

> **Third party ownership.** The word "insured", as used in parts 1 through 4 of this chapter, shall not be construed as preventing a person other than the insured with a proper insurable interest from making application for and owning a policy covering the insured or from being entitled under such a policy to any indemnities, benefits, and rights provided therein.

Mont. Code Ann. § 33-22-102. Because he is a "person" with a "proper insurable interest" in his children, David argues he is therefore entitled to the "indemnities, benefits, and rights" provided under the Policy. David claims that as a third-party owner of the Policy, he should be afforded first-party status for purposes of the UTPA.

PacificSource disagrees with David's statutory interpretation pursuant to which anyone with a "proper insurable interest" would automatically be afforded all first-party rights and remedies under the Policy. Instead, as PacificSource reads it, the statute provides that use of the term "insured" does not prevent a person other than the insured who has an insurable interest from: (1) applying for an insurance policy; and (2) owning a policy covering the insured. Under PacificSource's interpretation, a person does not become a third-party owner without first applying for and acquiring ownership of a policy covering another person. Because David did not apply for or own the Policy, PacificSource maintains he does not qualify as a third-party owner and cannot use this statute as a basis for asserting first-party status.

11

Under Montana law, "[s]tatutory construction is a holistic endeavor and must account for the statute's text, language, structure, and object." *MC, Inc. v. Cascade City-County Board of Health*, 343 P.3d 1208, 1212 (Mont. 2015) (citation omitted). Courts "interpret a statute first by looking to its plain language." *Montana Sports Shooting Ass'n,, Inc. v. State, Montana Dept. of Fish, Wildlife, and Parks*, 185 P.3d 1003, 1006 (Mont. 2008). Courts are to "read and construe each statute as whole so as to avoid an absurd result and to give effect to the purpose of the statute." *MC, Inc.*, 343 P.3d at 1212 (citation omitted). Courts "construe a statute by 'reading and interpreting the statute as whole, without isolating specific terms from the context in which they are used by the Legislature.'" *MC, Inc.*, 343 P.3d at 1212 (citations omitted).

Considering the third-party ownership statute as whole, the Court finds PacificSource's reading of the statutory language more persuasive. The statute states in relevant part that a person with an insurable interest is not prevented from "making application for and owning a policy covering the insured or from being entitled under such a policy" to rights and benefits under the policy. Mont. Code Ann.§ 33-22-102. David focuses exclusively on the "or" and reads this language as automatically entitling any person with an insurable interest to rights and benefits under the policy, regardless of whether the person also applied for and owned the

12

policy. But as PacificSource points out, this interpretation overlooks the portion of the clause after the disjunctive "or" referring back to "such a policy." As described in the first clause, "such a policy" means a policy covering the insured which is applied for and owned by the person with the insurable interest. Under this common-sense reading, a person with an insurable interest is not prevented from applying for and owning a policy covering the insured, thereby entitling that person to benefits and rights under the policy.

Thus, there was nothing to prevent David, as a person with an insurable interest, from applying for and owning a health insurance policy covering his children, thereby entitling him to any indemnities, rights, and benefits under the policy. But because David did not do so, he does not qualify as a third-party owner of the Policy and cannot use this statute as a basis for asserting first-party status.

### 4. Insured

Finally, to the extent David claims he qualifies as an "insured" under the statutory definition set forth in Mont. Code Ann. § 33-22-1703(6), the Court is not persuaded. Under this statute, an insured is defined as "an individual entitled to reimbursement for expenses of health care services under a policy or subscriber contract issued or administered by an insurer." Mont. Code. Ann. § 33-22-1703(6).

David maintains he was entitled to reimbursement for expenses of health care services for the boys because he (1) was ultimately responsible for their care, (2) had an insurable interest, and (3) was a third-party owner of the Policy. As discussed above, however, all three of these arguments are without merit. The Court concludes as a matter of law that Davis is not a first-party insured under the terms of the Policy or his interpretation of Montana law.

### B.     Third-Party Claimant or Beneficiary

In the alternative, David argues that he qualifies as a third-party claimant or beneficiary under the Policy.

####        1.     Third-Party Claimant

David argues he should be considered a "third-party claimant" as the term was described by the Montana Supreme Court in *O'Fallon v. Farmers Ins. Exchange,* 859 P.2d 1008 (Mont. 1993). The plaintiffs in *O'Fallon* were injured in an automobile accident caused by a driver who was insured under a liability policy issued by the defendant. *O'Fallon*, 859 P.2d at 1009. The plaintiffs brought suit against the insurer, alleging statutory bad faith claims handling under Sections 201 and 242 of the UTPA. *O'Fallon*, 859 P.2d at 1013. The insurer argued the plaintiffs did not have standing to bring a claim under the UTPA because they were not insureds or third-party claimants. *O'Fallon*, 859 P.2d at 1013.

14

The Court rejected this argument, noting that although the UTPA does not define "third-party claimant" it was "clear that the Legislature intended to distinguish between people making claims for bad faith against their own insurer as opposed to people who are damaged by an insurance company's conduct but have no contractual relationship to that company." *O'Fallon*, 859 P.2d at 1013. Because the plaintiffs alleged they were personally damaged as a result of the insurer's bad faith violations of Section 201 in handling their claims, the Court concluded the plaintiffs were third party claimants within the meaning of Section 242 of the UTPA. *O'Fallon*, 859 P.2d at 103.

Applying the *O'Fallon* Court's logic here, David maintains he qualifies as a third-party claimant because he alleges he was personally damaged by PacifiSource's bad faith claims handling of the boys' prescription medication needs. But the *O'Fallon* case is materially distinguishable, and David reads the Court's statements regarding third-party claimants far too broadly.

Unlike *O'Fallon*, there is no liability insurance coverage at issue here, which means there is no underlying third-party claim against a first-party insured. The UTPA makes clear that "[a] third-party may not file an action under this section until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underling claim." Mont. Code Ann. § 33-18-242(6)(b). Absent

15

some underlying third-party claim against a first-party insured under the Policy, David cannot be considered a third-party claimant.

### 2. Third-Party Beneficiary

Finally, David maintains he should be allowed to bring a third-party claim under the UTPA because he is a third-party beneficiary to the Policy. David cites *Diaz v. Blue Cross Blue Shield of Montana*, 267 P.3d 756, 762 (Mont. 2011), for the proposition that a third-party beneficiary is a person who can show from the insurance contract that it was intended to benefit him. Again citing his parental obligations, David argues he fits this description because he purchased the Policy to protect his children and was directly affected by PacificSource's claims handling. As David sees it, this is enough to show that PacificSource's contractual promise to pay prescription medication benefits for the boys was intended to benefit him.

This argument is premised on an incomplete reading of *Diaz,* which recognized the well-established principle that "[n]ot everyone who may benefit from performance, or who may suffer from non-performance, of a contract between two other persons is permitted to enforce the contract." *Diaz,* 267 P.3d at 761. The passage David relies on actually cautions that "[a] plaintiff cannot assume he or she is a third-party beneficiary merely because he or she has benefitted from

a contract" between two other parties. *Diaz*, 267 P.3d at 762. The Court further noted "there is a plain distinction between a promise, the performance of which may benefit a third party, and promise made expressly for the benefit of a third party." *Diaz*, 267 P.3d at 762. Thus, the Court made clear that to be a third-party beneficiary, "the plaintiff must be able to 'show from the face of the contract that it was intended to benefit [him or] her.'" *Diaz*, 267 P.3d at 762 (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (9th Cir. 2004)).

David cannot make such a showing on the undisputed facts presented here. While David claims he "purchased" the Policy, it was Heidi who applied for and procured the Policy providing health insurance coverage for the boys. The fact that premiums for the Policy were withdrawn from a joint bank account held by Heidi and David is largely irrelevant. David was not a named insured and was not entitled to coverage under the Policy. The Policy does not mention or identify David at all, and there is no indication from the face of the contract that it was intended to benefit him in any way. Any financial or emotional benefit David received due to the fact that his children were insured under the Policy was strictly incidental. To the extent David relies on *Harmon v. MIA Serv. Contracts*, 858 P.2d 19, 20 (Mont 1993), that case is factually inapposite and does not change the Court's analysis under the well-established principles set forth in *Diaz.* Because

17

there is nothing in the Policy indicating that it was intended to benefit David, he is not entitled to enforce the Policy or pursue relief under the UTPA as a third-party beneficiary.

## IV.     Conclusion

For the reasons discussed above, the Court concludes as a matter of law that David is not entitled to purse either first-party or third-party bad faith claims against PacificSource under the UTPA or Montana common law. Accordingly,

IT IS RECOMMENDED that David's Motion for Partial Summary Judgment (doc. 24) be DENIED and PacificSource's Cross-Motion for Partial Summary Judgment (doc. 28) be GRANTED.

DATED this 18th day of June, 2019.

_____
Jeremiah C. Lynch
United States Magistrate Judge